IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **GARY REED WALP,** ) | | |
|     Petitioner, ) | | |
| ) | | |
| vs. ) | No. 3:19-CV-906-M-BH | |
| ) | | |
| **DIRECTOR, Texas Department of Criminal** ) | | |
| **Justice, Correctional Institutions Division,** ) | | |
|     Respondent. ) | Referred to U.S. Magistrate Judge[1] | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court is the *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody*, received on April 15, 2019 (doc. 2). Based on the relevant filings and applicable law, the petition should be **DENIED** with prejudice.

### I.   BACKGROUND

Gary Reed Walp (Petitioner), a former inmate incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2016 parole revocation in the 5th Criminal District Court of Dallas County, Texas. (*See* doc. 2 at 5; doc. 3.)[2] The respondent is the Director of TDCJ-CID (Respondent). (*See* doc 2 at 1.)

**A.   State Court Proceedings**

In 1980, Petitioner was convicted of aggravated rape and sentenced to 35 years' imprisonment in Cause No. F80-11573-ML in the 5th Criminal District Court of Dallas County,

---

[1] By *Special Order No. 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

Texas.[3] (*See* doc. 12-17 at 91.) In 2012, the Texas Board of Pardons and Paroles (TBPP) released him on parole, which was set to expire on March 20, 2021. (*See* doc. 12-13 at 2-4; doc. 13-1 at 2-4.) On June 19, 2016, the Texas Department of Criminal Justice-Parole Division issued a pre-revocation arrest warrant for Petitioner that was executed on June 27, 2016. (*See* doc. 12-13 at 20-21, 27-28.) Petitioner received notice that he was alleged to have violated several conditions of his parole. (*See* doc. 12-12 at 35-37.) A revocation hearing was held on July 7, 2016, at which Petitioner admitted to violating his parole by failing to comply with the electronic monitoring program when he did not abide by curfew and removed his monitoring bracelet. (*See id.* at 24, 32, 36; doc. 3 at 6.) His parole was revoked on July 15, 2016. (*See* doc. 12-12 at 23.)

Petitioner's state habeas application challenging his 2016 parole revocation, dated November 15, 2016, was received by the trial court on November 22, 2016. (*See* doc. 12-17 at 5-22); *see also Ex parte Walp*, No. WR-10,625-17 (Tex. Crim. App. Mar. 6, 2019). After the Texas Court of Criminal Appeals remanded the case for supplemental information and evidence, the state trial court entered original and supplemental findings of facts and conclusions of law in which it found that Petitioner's claims were without merit and recommended that the application be denied. (*See* doc. 12-12 at 15-37; doc. 12-13 at 1-29; doc. 12-14 at 7-130; 12-15 at 5-50.) The Texas Court of Criminal Appeals denied the application without written order on the findings of the trial court without a hearing on March 6, 2019. (*See* doc. 12-5); *Ex parte Walp*, No. WR-10,625-17 (Tex. Crim. App. Mar. 6, 2019).

On November 14, 2018, while his state habeas application was pending, Petitioner was released on mandatory supervision that will expire on July 19, 2024. (*See* doc. 13-2 at 2-5; doc. 13-3 at 9.)

---

[3] Petitioner does not challenge this conviction or sentence in this § 2254 action.

2

B. **Substantive Claims**

Petitioner challenges his 2016 parole revocation on one ground: "Petitioner Was Denied Due Process of Law When His Parole Was Revoked." (doc. 2 at 5.) Respondent filed a response on July 29, 2019, and Petitioner filed a reply on August 30, 2019. (*See* docs. 13, 15.)

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1214, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case

3

differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). As for the "unreasonable application" standard, a writ may issue "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). A petitioner must show that "there was no reasonable basis for the state court to deny relief." *Id.* at 98.

      A federal district court must be deferential to state court findings supported by the record. *See Pondexter v. Dretke*, 346 F.3d 142,149-52 (5th Cir. 2003). The AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693 (2002) (citing *Williams*, 529 U.S. at 403-04). A state application that is denied without written order by the Texas Court of Criminal Appeals is an adjudication on the merits. *See Singleton v. Johnson*, 178 F. 3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (en banc) (holding that a denial signifies an

adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits).

Section 2254(d)(2) concerns questions of fact. *See Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

### III. MOOTNESS

Respondent contends that Petitioner's release November 14, 2018 release on mandatory supervision renders the § 2254 petition moot. (*See* doc. 13 at 4-5.)

"Article III of the Constitution limits federal 'Judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). A case or controversy becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* at 396 (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

> This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. . . . The parties must continue to have a "personal stake in the outcome" of the lawsuit. This means that, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."

*Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (internal quotation marks and citations omitted). If a controversy becomes moot, the case is dismissed for lack of subject matter jurisdiction. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990). The Fifth Circuit has held in unpublished

5

decisions, however, that "the extension of a habeas petitioner's parole discharge date is sufficient to create a live case or controversy for claims related to revocation proceedings, notwithstanding the petitioner's subsequent re-release on parole." *Wiggins v. Thaler*, 428 F. App'x 468, 473 (5th Cir. 2011) (King, J., concurring) (citing *Villegas v. Thaler*, 480 F. App'x 761, 763-64 (5th Cir. 2011) (per curiam); *Tolley v. Johnson*, 228 F.3d 410 (5th Cir. 2000) (per curiam)). In Texas, "an inmate on mandatory supervision is considered to be on parole" after release. *Coleman v. Dretke*, 395 F.3d 216, 219 n.1 (5th Cir. 2004) (citing Tex. Gov't Code § 508.147(b)).

Here, Petitioner was placed on mandatory supervision on November 14, 2018. (*See* doc. 13-2 at 5; doc. 13-3 at 9.) His mandatory supervision expires on July 19, 2024, if satisfactorily completed. (*See* doc. 13-2 at 2-5; doc. 13-3 at 9.) Before revocation, his parole was set to expire on March 20, 2021, if satisfactorily completed. (*See* doc. 12-13 at 2-4; doc. 13-1 at 2-4.) The extension of his parole release date from March 20, 2021, to July 19, 2024, "is a consequence of his parole revocation, collateral if not direct." *Tolley*, 228 F.3d at 410. Accordingly, to the extent Petitioner is seeking relief from his extended parole based on the alleged wrongful conduct of Respondent that could "be redressed by a favorable judicial decision," the action is not moot. *Id.*

### IV. DUE PROCESS

Petitioner contends he was denied due process when his parole was revoked. (doc. 2 at 5.) He claims that before the TBPP decided whether to revoke his parole, "a 'parole analyst', who was neither disclosed nor present at Petitioner's parole revocation hearing, conducted an ex parte evaluation of evidence in Petitioner's case and recommended to revoke his parole; Petitioner's parole officer and the hearing officer recommended non-revocation action." (*Id.*)

A parolee is constitutionally entitled to certain due process protections before a state may revoke his parole. *Morrissey v. Brewer,* 408 U.S. 471, 486-489 (1972). "The Due Process Clause

of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation." *Black v. Romano,* 471 U.S. 606, 610 (1985) (citation omitted). "[I]t is clear that the Fourteenth Amendment due process provisions contemplate that any [hearing to revoke probation] must comport with principles of fundamental fairness." *United States v. Tyler,* 605 F.2d 851, 853 (5th Cir. 1979) (citing *Morrissey*, 408 U.S. at 484). Parolees have a due process right to: (1) written notice of the alleged parole violations; (2) disclosure of the evidence against him; (3) an opportunity to be heard in person and present witnesses and documentary evidence; (4) cross-examine and confront adverse witnesses unless there is good cause to disallow confrontation; (5) a neutral decision maker; and (6) a written statement as to the evidence relied upon and the reasons for revoking parole. *See Gagnon v. Scarpelli,* 411 U.S. 778, 786 (1973) (quoting *Morrissey*, 408 U.S. at 489).

Here, Petitioner argues that he "was unable to confront/cross-examine the [parole] analyst nor heard relative to the analyst's evaluation/recommendation" to the TBPP that his parole be revoked. (doc. 2 at 5.) In the state habeas proceedings, the trial court issued supplemental findings of fact and conclusions of law, which cited, in part, an affidavit by the TBPP's Chief of Staff:

3. Pursuant to Texas Administrative [C]ode Title 37, Part 5, Section 146.9(a), "the parole panel or designee of the [TBPP] shall conduct the revocation hearing. The parole panel or designee of the [TBPP] must determine whether it is shown by a preponderance of the credible evidence that the releasee violated a condition of parole or mandatory supervision."

4. [Parole] Analysts are "designees" of the [TBPP] for the purpose of conducting parole revocation hearings. They are responsible for the review and presentation of hearing reports, waivers, and transmittals to board panels.
. . .

6. Designated board analysts review hearing reports to ensure compliance with hearing rules outlined in Texas Administrative Code Chapters 146 and 147.

7. Hearing officers and analysts designated by the [TBPP] are required by the [TBPP] to make a recommendation, outside of the hearing, for the parole panel

7

> to consider during its deliberations when making a final disposition on an offender's release status.
>
> . . .
>
> 9. [Petitioner] was afforded the right to confront and cross-examine adverse witnesses in that he was provided with the opportunity to ask the parole officer, the only witness present, any questions he may have had pertaining to the alleged parole violations and his parole adjustment.
>
> 10. After the hearing was held, the hearing officer prepared a hearing report as required by Texas Administrative Code Title 37, Part 5, Section 146.9(c). the hearing officer made a recommendation and submitted the hearing report to the [TBPP] designated analyst to review the report for compliance with the Texas Administrative Code.
>
> 11. The [TBPP] analyst completed a compliance review of [Petitioner's] case which included a review of all the documents presented as evidence at the hearing. The analyst concurred with the hearing officer's findings and conclusions. The [TBPP] analyst made a recommendation to revoke.
>
> . . .
>
> 15. The Court finds that [Petitioner] was not provided an opportunity to confront and question the [TBPP] designated analyst.
>
> 16. The Court finds that the [TBPP] designated analyst was not an adverse witness who [Petitioner] had a right to confront and cross-examine under *Morrisey v. Brewer*. The analyst was a designee of a neutral and detached hearing body, the [TBPP], as governed by [Texas] law.
>
> . . .
>
> 18. The Court concludes that [Petitioner's] due process rights were not violated when he was denied the opportunity to confront and question the [TBPP] designated analyst. [Petitioner] was not entitled to confront and cross-examine the [TBPP] designee.

(doc. 12-14 at 9-12 (internal citations omitted))

The record shows that under Texas law, the TBPP's designated analyst was tasked with reviewing the evidence from the revocation hearing and providing a recommendation to the TBPP, outside of the parole hearing, for the TBPP panel's consideration during deliberations. (*See id.*) The record also shows that the analyst was not a witness to Petitioner's alleged parole violations at the revocation hearing, and Petitioner does not contend otherwise. (*See* doc. 12-12 at 27-34.)

Petitioner instead generally contends that the analyst's recommendation of revocation constituted testimonial evidence adverse to him, which entitled him to confront and cross-examine the analyst. (*See* doc. 3 at 9-17.) He claims that "[d]epending on the questions asked by Petitioner and the analyst's answers, Petitioner may have elicited impeachment testimony that showed the analyst's bias, flaws in his methodology, or that his recommendation was based on an unreasonable or erroneous evaluation of the evidence or the need to revoke." (*Id.* at 15.) Petitioner does not, however, provide any clearly established federal law, as determined by the Supreme Court, showing that the state court's determination that a designee of neutral decision-maker who is required under state law to provide it with a recommendation in parole revocation proceedings outside of the hearing, is rendered an adverse witness subject to confrontation and cross-examination under *Morrissey*. To the extent he relies on *Bullcoming v. New Mexico*, 564 U.S. 647 (2011), for his claim that the "analyst's recommendation appeared in the hearing officer's report to the Board, which amounted to 'testimonial' evidence" for confrontation clause purposes," his reliance is misplaced. (doc. 3 at 10; *see also id.* at 12.) *Bullcoming* involved the application of the confrontation clause to statements in scientific reports offered by one party against the other, not involve parole revocation proceedings, where "the full panoply of rights due a defendant in [a criminal prosecution] does not apply[.]" *Morrissey*, 408 U.S. at 480. Petitioner has not shown that the Supreme Court has extended its holding in *Bullcoming* to reports or recommendations made under state law by designees of neutral factfinders in parole revocation proceedings.

Petitioner has failed to show that the state court's rejection of his claim was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court. He also has failed to show that the state court's decision was based on an unreasonable

9

determination of the facts in light of the evidence presented in the state habeas proceedings.[4] The claim should be denied.

## V. RECOMMENDATION

The *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody*, received on April 15, 2019 (doc. 2) should be **DENIED** with prejudice.

**SIGNED this 8th day of February, 2022.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[4] Petitioner also claims in his brief that he was denied a meaningful opportunity to be heard because he was not given the opportunity to confront and cross-examine the analyst. As discussed, he has not shown that the state court's decision that he was not entitled to confront and cross-examine the analyst was unreasonable or contrary to clearly established federal law. He therefore also has failed to show that the state court's rejection of any claim that the same allegations violated his due process rights to be heard was unreasonable or contrary to clearly established federal law. To the extent Petitioner asserts this claim as an independent basis for relief, it should be denied.